UNITED STATES DISTRICT COURT ÐEC 0 1 2010
SOUTHERN DISTRICT OF NEW YORK

RIVERKEEPER, INC., et al.,

           Plaintiffs,

           v.

LISA P. JACKSON, as Administrator of the
United States Environmental Protection
Agency,

           Defendant.

------------------------------------------------------------------ x

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 0 3 DEC 2010

ECF Case

93 Civ. 0314 (LTS)

[PROPOSED] ORDER
TERMINATING THE
SECOND AMENDED
CONSENT DECREE AND
DISMISSING
THE COMPLAINT

WHEREAS, plaintiffs and defendant Lisa P. Jackson, the Administrator

of the United States Environmental Protection Agency ("EPA"), have advised the

Court that, on November 22, 2010, they executed a settlement agreement (the

"Agreement"), attached hereto as Exhibit A, to resolve their disputes in this action.

WHEREAS, the Court has reviewed a copy of the Agreement in connection

with its review of this proposed order;

IT IS HEREBY ORDERED that, conditioned on EPA's compliance with

paragraphs 3 and 4 of the Agreement:

      1.  the Second Amended Consent Decree is terminated;

      2.  the Complaint is dismissed in its entirety with prejudice;

3. Notwithstanding paragraphs 1 and 2 of this Order, in the event that EPA fails to comply with paragraph 3 or paragraph 4 of the Agreement, plaintiffs shall have the right to reopen this action pursuant to paragraph 10 of the Agreement; and

4. The Court shall have jurisdiction to reopen this action in accordance with paragraph 3 of this Order

SO ORDERED:

LAURA T. SWAIN
UNITED STATES DISTRICT JUDGE

Dated: December 3 , 2010

2

EXHIBIT A TO THE

PROPOSED ORDER TERMINATING THE SECOND AMENDED
CONSENT DECREE AND DISMISSING THE COMPLAINT IN

*RIVERKEEPER, INC., ET AL. V. JACKSON*, 93 CIV. 314 (LTS)

SETTLEMENT AGREEMENT AMONG THE UNITED STATES
ENVIRONMENTAL PROTECTION AGENCY, PLAINTIFFS IN CRONIN,
ET AL. V. REILLY, 93 CIV. 314 (LTS) (SDNY), AND PLAINTIFFS IN
RIVERKEEPER, ET AL. V. EPA, 06 CIV. 12987 (PKC) (SDNY)

WHEREAS, on January 19, 1993, a group of individuals and
environmental organizations (collectively, the "Cronin Plaintiffs")[1] filed a
complaint in the United States District Court for the Southern District of New
York under the caption Cronin, et al. v. Reilly, 93 Civ. 0314 (LTS) (the "Cronin
action"), alleging, under section 505(a)(2) of the Clean Water Act (the "CWA"), 33
U.S.C. § 1365(a)(2), that the United States Environmental Protection Agency
("EPA") had failed to perform a non-discretionary duty to issue regulations
implementing section 316(b) of the CWA, 33 U.S.C. § 1326(b);

WHEREAS, on October 10, 1995, the Court (Schwartz, J.) entered a
consent decree, executed by EPA and the Cronin Plaintiffs, in which EPA
agreed, inter alia, to propose regulations implementing section 316(b) of the
CWA and to take final action with respect to the regulations;

WHEREAS, on November 21, 2000, the Court entered an Amended
Consent Decree, executed by EPA and the Cronin Plaintiffs, (i) providing for
EPA to implement section 316(b) of the CWA by conducting three separate
rulemaking proceedings – Phase I, which pertained to new facilities that employ

---

[1]   There have been several substitutions of plaintiffs since the action was filed. The current
Cronin Plaintiffs are: Riverkeeper, Inc.; Alex Matthiessen, a/k/a The Hudson Riverkeeper; Maya K. Van
Rossum, a/k/a The Delaware Riverkeeper; Terrance E. Backer, a/k/a The Soundkeeper; John Torgan, a/k/a
The Narragansett BayKeeper; Joseph E. Payne, a/k/a The Casco BayKeeper; Leo O'Brien, a/k/a the San
Francisco BayKeeper; Sue Joerger, a/k/a The Puget Soundkeeper; Steven E. Fleischli, a/k/a The Santa
Monica BayKeeper; Andrew Willner, a/k/a The New York/New Jersey Baykeeper; The Long Island
Soundkeeper Fund, Inc.; The New York Coastal Fishermen's Association, Inc.; and The American Littoral
Society, Inc.

1

cooling water intake structures; and Phases II and III, which pertained to existing facilities that employ cooling water intake structures – (ii) modifying the schedule for the rulemaking process, and (iii) providing for certain additional reporting requirements on EPA;

WHEREAS, on November 9, 2001, EPA took final action on Phase I of the rulemaking and issued regulations applicable to new facilities, with the exception of new offshore oil and gas extraction facilities, that employ cooling water intake structures;

### THE SECOND AMENDED CONSENT DECREE

WHEREAS, on November 25, 2002, the Court entered a Second Amended Consent Decree (the "SACD"), executed by EPA and the Cronin Plaintiffs, concerning the implementation of section 316(b) of the CWA for existing facilities that employ cooling water intake structures;

WHEREAS, the SACD modified the schedule for the Phase II and Phase III rulemaking process and provided for certain additional reporting requirements on EPA;

WHEREAS, Phase II pertained to existing utilities and non-utility power producers (i.e., facilities that generate electric power) that employ a cooling water intake structure, and whose intake flow levels exceed a minimum threshold to be determined by EPA during the Phase II rulemaking process, see SACD at ¶ 1(f)(2);

WHEREAS, Phase III pertained to other existing facilities that "employ a cooling water intake structure and whose intake flow levels exceed a

minimum threshold to be determined by EPA during the Phase III rulemaking process," including "(1) utility and non-utility power producers not covered by the Phase II Regulations; (2) pulp and paper manufacturing facilities; (3) chemical and allied products manufacturing facilities; (4) petroleum and coal products manufacturing facilities; and (5) primary metals manufacturing facilities," SACD at ¶ 1(f)(3);

WHEREAS, the SACD provided, inter alia, for EPA to (i) take final action with respect to the proposed Phase II regulations, which had been proposed on or about February 28, 2002, no later than February 16, 2004, see SACD at ¶ 2(b)(1); (ii) issue proposed Phase III regulations no later than November 1, 2004, see id. at ¶ 2(b)(2); and (iii) take final action with respect to the proposed Phase III regulations no later than June 1, 2006, see id.;

WHEREAS, the SACD specified that neither the Cronin Plaintiffs nor EPA waived any claims or defenses "arising out of or in connection with" EPA's taking of final action with respect to such proposed regulations, see id. at ¶ 12(a), and specified further that the Court did not retain jurisdiction under the SACD to review any such final action by EPA "except for the purpose of determining EPA's compliance with this Decree," see id. at ¶ 12(e).

## THE PHASE II RULEMAKING

WHEREAS, on February 16, 2004, EPA took final action with respect to the proposed Phase II regulations and published a final rule (the "Phase II Rule") in the Federal Register on July 9, 2004, see 69 Fed. Reg. 41,576, 41,669 (July 9, 2004);

3

WHEREAS, on January 25, 2007, on petitions for review of the Phase II Rule, the United States Court of Appeals for the Second Circuit remanded several provisions of the Phase II Rule to EPA, see Riverkeeper v. EPA, 475 F.3d 83 (2d Cir. 2007);

WHEREAS, on April 1, 2009, the United States Supreme Court reversed the Second Circuit's decision in Riverkeeper, 475 F.3d 83, as to one issue, see Entergy Corp. v. Riverkeeper, Inc., 129 S. Ct. 1498, --- U.S. ---- (2009), and remanded the matter to the Second Circuit;

WHEREAS, on September 29, 2009, the Second Circuit granted EPA's motion for issuance of the mandate remanding the Phase II Rule to EPA for action consistent with the Supreme Court's decision in Entergy Corp., 129 S. Ct. 1498, and the Second Circuit's decision in Riverkeeper, 475 F.3d 83;

### THE PHASE III RULEMAKING

WHEREAS, on November 1, 2004, EPA proposed regulations for the Phase III facilities, and at the same time proposed regulations for new offshore oil and gas extraction facilities (which had been excluded from the Phase I rulemaking), and published both sets of proposed regulations in the Federal Register on November 24, 2004, see 69 Fed. Reg. 68,444 (November 24, 2004);

WHEREAS, on June 1, 2006, EPA took final action on these proposed regulations, and published its decision in the Federal Register on June 16, 2006, see 71 Fed. Reg. 35,006, 35,039 (June 16, 2006);

WHEREAS, in the June 16, 2006 Federal Register notice, EPA provided notice of (i) the promulgation of regulations covering new offshore oil

4

and gas extraction facilities and (ii) that CWA section 316(b) requirements for the Phase III facilities would continue to be established by EPA and the states on a case-by-case, best professional judgment basis, under the National Pollutant Discharge Elimination System ("NPDES") permitting program;

WHEREAS, ConocoPhillips Company, Anadarko Petroleum Corporation, and twelve environmental organizations — Riverkeeper, Inc.; Soundkeeper, Inc.; Raritan Baykeeper, Inc., d/b/a NY/NJ Baykeeper; Delaware Riverkeeper Network; American Littoral Society; Save the Bay-People for Narragansett Bay; Friends of Casco Bay; Santa Monica Baykeeper; Natural Resources Defense Council; Waterkeeper Alliance, Inc.; Surfrider Foundation; and Environment Massachusetts — filed petitions for review of EPA's June 16, 2006 decision in the First, Second, Fifth, and Ninth Circuit Courts of Appeals, all of which were consolidated for review in the Fifth Circuit, by Order of the Joint Panel on Multidistrict Litigation, under the random selection procedures mandated in 28 U.S.C. § 2112(a); ConocoPhillips Co., et al. v. United States Environmental Protection Agency, et al., No. 06-60662 (5th Cir.) (the "Fifth Circuit Phase III proceeding");

WHEREAS, on November 17, 2006, some of these environmental organizations filed a Complaint in the United States District Court for the Southern District of New York under the caption Riverkeeper, et al. v. EPA, 06 Civ. 12987 (PKC) (the "SDNY Phase III action"), and on January 19, 2007, all twelve of these organizations (collectively, the "SDNY Phase III Plaintiffs") filed an Amended Complaint in this action, alleging that EPA failed to perform a non-

5

discretionary duty under section 316(b) of the CWA by not issuing regulations covering the Phase III facilities, and also had violated sections 706(2)(A) and 706(2)(C) of the Administrative Procedure Act, 5 U.S.C. §§ 706(2)(A), 706(2)(C), in the manner in which it had made that decision;

WHEREAS, on January 19, 2007, the Court (Castel, J.) granted the motion of an unincorporated association, the Cooling Water Intake Structure Coalition, consisting of the American Chemistry Council, the American Forest & Paper Association, the American Iron & Steel Institute, the American Petroleum Institute, General Electric Company, and the Utility Water Act Group ("the SDNY Phase III Intervenors") to intervene in the SDNY Phase III action;

WHEREAS, on September 24, 2007, the Court (Castel, J.) denied EPA's motion to dismiss the SDNY Phase III action for lack of subject matter jurisdiction;

WHEREAS, on November 26, 2007, the Court (Castel, J.) granted EPA's motion for a stay of the SDNY Phase III action pending a ruling in the Fifth Circuit Phase III proceeding;

WHEREAS, on July 6, 2009, EPA, joined by the SDNY Phase III Plaintiffs, moved the Fifth Circuit for a voluntary remand of EPA's June 16, 2006 decision as it pertains to Phase III facilities, which is also the subject matter of the SDNY Phase III action;

WHEREAS, on July 23, 2010, the Fifth Circuit granted the joint motion of EPA and the SDNY Phase III Plaintiffs for a voluntary remand of EPA's June 16, 2006 decision as it pertains to Phase III facilities;

6

WHEREAS, the stay in the SDNY Phase III action remains in effect pending further action of the Court;

**SETTLEMENT OF THE CRONIN ACTION AND THE SDNY Phase III ACTION**

WHEREAS, on August 14, 2008, EPA moved to terminate the SACD on the grounds that EPA has fulfilled all of its obligations under that consent decree; and the Cronin Plaintiffs opposed EPA's motion to terminate the SACD and cross-moved to enforce or modify that consent decree in order to establish a timetable for completion of the Phase II rulemaking; and the respective motions are pending before the Court;

WHEREAS, the Cronin Plaintiffs and the SDNY Phase III Plaintiffs intend to seek fees as prevailing parties in connection with the Cronin action, the SDNY Phase III action, and the Fifth Circuit Phase III proceeding;

WHEREAS, EPA, the Cronin Plaintiffs, and the SDNY Phase III Plaintiffs wish to enter into this Agreement to avoid protracted and costly litigation, to preserve judicial resources, and to permit EPA to reconsider its decisions regarding Phase II and Phase III facilities in light of more recent technical information, additional public comments, and the section 316(b) decisions of the Supreme Court and the Second Circuit Court of Appeals;

NOW, THEREFORE, EPA, the Cronin Plaintiffs, and the SDNY Phase III Plaintiffs, intending to be bound by this Agreement, hereby stipulate and agree as follows:

7

## I.     Definitions

1.     The parties to this Agreement are EPA, the Cronin Plaintiffs, and the SDNY Phase III Plaintiffs (collectively, the "Parties").

2.     For the purposes of this Agreement, the term "existing facilities" includes, but is not limited to, the following types of existing facilities – (1) utility and non-utility power producers; (2) pulp and paper manufacturing facilities; (3) chemical and allied products manufacturing facilities; (4) petroleum and coal products manufacturing facilities; and (5) primary metals manufacturing facilities – that employ cooling water intake structures and whose intake flow levels exceed a minimum threshold to be determined by EPA during the rulemaking process.

## II.     EPA Actions and Deadlines

3.     No later than March 14, 2011, the EPA Administrator shall sign for publication in the Federal Register a notice of proposed rulemaking implementing section 316(b) of the CWA at existing facilities. The notice of proposed rulemaking shall, among other things, solicit comments on the appropriateness of subjecting the cooling water intake structures at existing facilities to national, categorical performance standards. EPA shall make a copy of the notice available to the Cronin Plaintiffs, the SDNY Phase III Plaintiffs, and the SDNY Phase III Intervenors within five business days following signature.

4.     No later than July 27, 2012, the EPA Administrator shall sign for publication in the Federal Register a notice of its final decision pertaining to the

8

issuance of requirements for implementing section 316(b) of the CWA at existing facilities. EPA shall make a copy of the notice available to the Cronin Plaintiffs, the SDNY Phase III Plaintiffs, and the SDNY Phase III Intervenors within five business days following signature.

5.      Within 10 business days after the Effective Date of this Agreement (as that term is defined in Paragraph 27 of this Agreement), a link to a copy of this Agreement shall be posted on the Office of Water website

6.      Notifications and Meetings with EPA

(a).      Within five business days after each of the dates listed below, EPA will notify the Cronin Plaintiffs, the SDNY Phase III Plaintiffs, and the SDNY Phase III Intervenors whether EPA has performed the task corresponding to the below listed date:

(i) August 18, 2011 – The Office of Water will complete a review of the major issues raised by public comments on the proposed rules implementing section 316(b) of the CWA for existing facilities;

(ii) January 19, 2012 – The Office of Water will hold a meeting with the EPA Administrator or Deputy Administrator to discuss the range of regulatory options for EPA's final action to implement section 316(b) of the CWA for existing facilities.

(b)      Paragraph 6(a) of this Agreement sets forth notice obligations only. In no event shall this Agreement be construed to require EPA to perform any of the tasks listed in Paragraph 6(a) by the date on which notice is to be provided; and any failure by EPA to perform the tasks listed in Paragraph 6(a) does not

9

constitute a breach of this Agreement.

(c)     If EPA fails to perform any task within 10 business days after a date listed in Paragraph 6(a), EPA shall make available a member of the Senior Executive Service involved with developing the rules implementing section 316(b) of CWA for a meeting with the Cronin Plaintiffs and the SDNY Phase III Plaintiffs, on a date that is mutually convenient for the Cronin Plaintiffs and the SDNY Phase III Plaintiffs and for EPA.

## III.    Dismissal of the Claims

7.     Within 10 business days after this Agreement is signed by the Parties, EPA and the Cronin Plaintiffs shall advise the Court in the Cronin action that this Agreement has been executed and file a proposed order (attached hereto as Exhibit A) seeking dismissal with prejudice of all claims in the Cronin action, conditioned on EPA's compliance with Paragraphs 3 and 4 of this Agreement. If the Court does not enter such an order, this Agreement shall have no force or effect. Notwithstanding this dismissal of claims, however, the Cronin Plaintiffs shall have the right to reopen the Cronin action under the circumstances described in Paragraph 10 of this Agreement.

8.     Within 10 business days after this Agreement is signed by the Parties, EPA and the SDNY Phase III Plaintiffs shall advise the Court in the SDNY Phase III action that this Agreement has been executed. Within 10 days after an order of dismissal, in a form substantially similar to the Order attached as Exhibit A to this Agreement, has been entered in the Cronin action, the Parties shall submit a proposed order (attached hereto as Exhibit B) seeking

10

dismissal with prejudice of all claims in the SDNY Phase III action. If the Court does not enter such an order, this Agreement shall have no force or effect.

## IV.   Remedies for Breach

9.     In the event that EPA fails to take either or both of the actions described in Paragraphs 3 and 4 of this Agreement, the sole remedy under this Agreement for the Cronin Plaintiffs and the SDNY Phase III Plaintiffs shall be as set forth in Paragraph 10 of this Agreement. The Parties agree that contempt of court is not an available remedy for a breach of this Agreement.

10.    In the event that EPA fails to take either or both of the actions described in Paragraph 3 and 4 of this Agreement, the Cronin Plaintiffs and the SDNY Phase III Plaintiffs shall have the right to reopen the Cronin action. In the event that any of the SDNY Phase III Plaintiffs seeks leave to join the re-opened Cronin action as a plaintiff, EPA shall not object to such a request. A reopening of the Cronin action pursuant to this paragraph based on EPA's not taking the actions described in Paragraphs 3 or 4 would not be barred by the dismissal of the Cronin action or the SDNY Phase III action in accordance with this Agreement; provided, however, that EPA shall not be deemed to have waived any right to challenge the validity of, and expressly preserves all defenses to, the reopened Cronin action. Plaintiffs agree that they may not reopen the Cronin action pursuant to this paragraph to challenge the EPA's final decision on the issuance of requirements for existing facilities with cooling water intake structures pursuant to Paragraph 4.

11.    This Agreement shall not bar the Cronin Plaintiffs and SDNY

11

Phase III Plaintiffs from challenging EPA's final decision on the issuance of requirements for existing facilities with cooling water intake structures either by filing a petition for review in the United States Court of Appeals or by commencing an action in a United States District Court, provided, however, that EPA shall not be deemed to have waived any right to challenge the validity of, and expressly preserves all of its defenses to, such an action. The filing of any such petition for review or district court action, moreover, shall not extend the term of this Agreement beyond its termination date, as set forth in Paragraph 28 below.

## V. Savings Provisions

12.     Nothing in this Agreement shall be construed to confer upon a district court jurisdiction to review any decision to be made by EPA pursuant to this Agreement that would not otherwise be reviewable by a district court, or to otherwise confer upon a district court jurisdiction to review any issues that are within the exclusive jurisdiction of the United States Courts of Appeals under section 509(b)(1) of the CWA, 33 U.S.C. § 1369(b)(1).

13.     Nothing in this Agreement shall constitute or be interpreted to constitute a commitment or requirement that EPA obligate or pay funds in contravention of the Anti-Deficiency Act, 31 U.S.C. § 1341, or take actions in contravention of the Administrative Procedure Act, 5 U.S.C. §§ 551-559, 701-706, the CWA, or any other law or regulation, either substantive or procedural.

14.     Except as expressly provided herein, or in any supplement to this Agreement, nothing in this Agreement shall be construed to limit or modify the

12

discretion accorded EPA by the CWA or by general principles of administrative law, including the discretion to alter, amend, or revise any response or final action contemplated by this Agreement. EPA's obligation to perform the actions specified in Paragraphs 3 through 6 of this Agreement by the time specified therein does not constitute a limitation or modification of EPA's discretion within the meaning of this paragraph.

15. If a subsequent change in law alters or relieves EPA of any of its obligations concerning the matters addressed in this Agreement, then this Agreement shall be amended to conform to such changes.

## VI. *Force Majeure*

16. The Parties recognize that the performance of this Agreement is subject to fiscal and procurement laws and regulations of the United States, which include but are not limited to the Anti-Deficiency Act, 31 U.S.C. §§ 1341, et seq. The possibility exists that unforeseeable circumstances outside of EPA's reasonable control could delay compliance with the deadlines set forth in this Agreement, despite EPA's best efforts to comply with this Agreement. Should a delay occur due to such circumstances, any resulting failure by EPA to meet the dates set forth in Paragraphs 3 and 4 above shall not constitute a failure to comply with the terms of this Agreement by EPA. In the event that EPA invokes (or intends to invoke) this provision of the Agreement, EPA will provide the Cronin Plaintiffs and the SDNY Phase III Plaintiffs with timely notice detailing the circumstances that EPA believes demonstrate that compliance is beyond its reasonable control, and detailing

13

the steps EPA intends to take to remove and/or mitigate the Force Majeure.

## VII. Representative Authority

17.    The individuals signing this Agreement on behalf of the Parties hereby certify that they are authorized to bind their respective parties to this Agreement.

## VIII. Choice of Law

18.    This Agreement shall be governed and construed under the laws of the United States.

## IX. General Provisions

19.    This Agreement was negotiated among the Cronin Plaintiffs, the SDNY Phase III Plaintiffs, and EPA in good faith and was jointly drafted by the Parties.

20.    This Agreement contains all the terms and conditions agreed upon by the Parties in connection with the settlement of the Cronin action and the SDNY Phase III action pursuant to this Agreement. All statements, representations, promises, agreements, or negotiations, oral or otherwise, among the Parties or counsel in relation to resolving the Cronin action and the SDNY Phase III action through this Agreement that are not included herein are specifically superseded by this Agreement and shall have no force or effect.

21.    This Agreement applies to, is binding upon, and inures to the benefit of the Parties and their respective successors, assigns, and designees.

22.    Nothing in this Agreement shall be construed to make any other person or entity not executing this Agreement a third-party beneficiary to this

14

Agreement.

23.     This Agreement shall not constitute or be construed as an admission or adjudication by the United States, EPA, the Cronin Plaintiffs, or the SDNY Phase III Plaintiffs of any question of fact or law with respect to any of the claims raised in the Cronin action or the SDNY Phase III action. Nor is it an admission of violation of any law, rule, regulation, or policy by the United States or EPA. This Agreement shall not be admitted against EPA for any purpose in any proceeding (other than in connection with reopening of the Cronin action pursuant to Paragraph 10 of this Agreement) without prior notice to and the express consent of EPA.

24.     There shall be no modification of this Agreement except by written agreement of the Parties or order of the Court.

25.     As soon as practicable following the Effective Date of this Agreement (as that term is defined in Paragraph 27 of this Agreement), the United States, on behalf of EPA, shall pay $95,500 and $210,854 to the Cronin Plaintiffs and the SDNY Phase III Plaintiffs, respectively, in fees and costs. Payment of this sum by the United States shall constitute satisfaction in full of any remaining claim by the Cronin Plaintiffs and the SDNY Phase III Plaintiffs for costs of suit or attorneys fees arising out of the Cronin action, the SDNY Phase III action, and the Fifth Circuit Phase III Proceeding. The Cronin Plaintiffs and the SDNY Phase III Plaintiffs further agree that they cannot seek reimbursement in any subsequent action against EPA for any fees or costs incurred by either Cronin Plaintiffs or the SDNY Phase III Plaintiffs as a result

15

of work or expenses for which EPA is paying fees and costs pursuant to this

paragraph or as a result of any work or expenses that they will incur in

connection with implementing this Agreement. This paragraph shall not be

construed to preclude the Cronin Plaintiffs or the SDNY Phase III Plaintiffs

from seeking reimbursement of fees and costs incurred in seeking an order

reopening the Cronin action or pursuing a reopened Cronin action; provided,

however, that EPA shall not be deemed to have waived any, and expressly

reserves all, defenses to such fee requests.

## X.   Notice

26.    Any notice required or made with respect to this Agreement shall

be in writing and shall be effective upon receipt. For any matter relating to this

Agreement, the contact persons are:

For the Cronin Plaintiffs:

> P. Kent Correll
> Law Office of P. Kent Correll
> 250 Park Avenue, 7th Floor
> New York, New York 10177
> (212) 475-3070
>
> Reed W. Super
> Super Law Group, LLC
> 131 Varick Street, Suite 1001
> New York, New York 10013
> (212) 242-2273

For the SDNY Phase III Plaintiffs:

> Reed W. Super
> Super Law Group, LLC
> 131 Varick Street, Suite 1001
> New York, New York 10013
> (212) 242-2273

16

Charles C. Caldart
National Environmental Law Center
1402 Third Avenue, Suite 715
Seattle, WA 98101
(206) 568-2853

Joseph J. Mann
National Environmental Law Center
369 Broadway Street, Suite 200
San Francisco, CA 94133
(415) 622-0086, ext. 306

Edward Lloyd
Columbia University School of Law
Environmental Law Clinic
435 West 116th Street
New York, New York 10027
(212) 854-4376

P. Kent Correll
Law Office of P. Kent Correll
250 Park Avenue, 7th Floor
New York, New York 10177
(212) 475-3070

For EPA:

Li Yu
United States Attorney's Office, Southern District of New York
86 Chambers Street, Third Floor
New York, NY 10007
(212) 637-2734

Letitia Grishaw
Chief, Environmental Defense Section
U.S. Department of Justice
P.O. Box 23986
Washington, D.C. 20026-3986

Richard T. Witt
Office of General Counsel
U.S. Environmental Protection Agency
Ariel Rios Building, MC 2355A
1200 Pennsylvania Avenue, N.W.

17

Washington, DC 20460

Upon written notice to the other parties, any party may designate a successor contact person for any matter relating to this Agreement.

## XI.    Effective Date and Termination

27.    The Effective Date of this Agreement shall be the later of the following: (a) the date on which the Court in the <u>Cronin</u> action approves the proposed Order referenced in Paragraph 7 of this Agreement; and (b) the date on which the Court in the SDNY Phase III action approves the proposed Order referenced in Paragraph 8 of this Agreement.

28.    Except in the event that EPA invokes the *force majeure* provision in Paragraph 16, this Agreement shall terminate on the earlier of (i) July 27, 2012 or (ii) the date on which the EPA Administrator shall sign for publication in the Federal Register a notice of EPA's final decision pertaining to the issuance of requirements for implementing section 316(b) of the CWA at existing facilities. In the event that EPA invokes the provision of Paragraph 16 based on a *force majeure*, this Agreement shall terminate on the date on which the EPA Administrator shall sign for publication in the Federal Register a notice of EPA's final decision pertaining to the issuance of requirements for implementing section 316(b) of the CWA at existing facilities. Provided, however, that, in any event, a request to reopen the

18

Cronin action pursuant to Paragraph 10 shall not be deemed untimely if it is made within 30 days of the termination date set forth in this Paragraph.

FOR THE CRONIN PLAINTIFFS:

Dated: November 22, 2010

_____

REED W. SUPER
Super Law Group, LLC
131 Varick Street, Suite 1001
New York, New York 10013
(212) 242-2273

P. Kent Correll
Law Office of P. Kent Correll
250 Park Avenue, 7th Floor
New York, New York 10177
(212) 475-3070

FOR THE SDNY PHASE III PLAINTIFFS:

Dated: November 22, 2010

_____

REED W. SUPER
Super Law Group, LLC
131 Varick Street, Suite 1001
New York, New York 10013
(212) 242-2273

P. Kent Correll
Law Office of P. Kent Correll
250 Park Avenue, 7th Floor
New York, New York 10177
(212) 475-3070

Edward Lloyd
Columbia University School of Law
Environmental Law Clinic
435 West 116th Street
New York, New York 10027
(212) 854-4376

19

Charles C. Caldart
National Environmental Law Center
1402 Third Avenue, Suite 715
Seattle, WA 98101
(206) 568-2853

Joseph J. Mann
National Environmental Law Center
369 Broadway Street, Suite 200
San Francisco, CA 94133
(415) 622-0086, ext. 306

FOR EPA:

PREET BHARARA
United States Attorney
Southern District of New York

Dated: November 22, 2010

LI YU
Assistant United States Attorney
86 Chambers Street, Third Floor
New York, NY 10007
(212) 637-2734

Dated: November 22, 2010

RICHARD T. WITT
Office of General Counsel
U.S. Environmental Protection Agency,
MC 2355A
1200 Pennsylvania Avenue, N.W.
Washington, DC 20460

20

# Exhibit    A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------- x

RIVERKEEPER, INC., et al.,

                    Plaintiffs,

                  v.

LISA P. JACKSON, as Administrator of the
United States Environmental Protection
Agency,

                    Defendant.

|     |     |
| --- | --- |
| : | ECF Case |
| : |     |
| : | 93 Civ. 0314 (LTS) |
| : |     |
| : | **[PROPOSED] ORDER** |
| : | **TERMINATING THE** |
| : | **SECOND AMENDED** |
| : | **CONSENT DECREE AND** |
| : | **DISMISSING** |
| : | **THE COMPLAINT** |
| : |     |

---------------------------------------------------------------- x

      WHEREAS, plaintiffs and defendant Lisa P. Jackson, the Administrator

of the United States Environmental Protection Agency ("EPA"), have advised the

Court that, on November 22, 2010, they executed a settlement agreement (the

"Agreement"), attached hereto as Exhibit A, to resolve their disputes in this action.

      WHEREAS, the Court has reviewed a copy of the Agreement in connection

with its review of this proposed order;

      IT IS HEREBY ORDERED that, conditioned on EPA's compliance with

paragraphs 3 and 4 of the Agreement:

        1. the Second Amended Consent Decree is terminated;

        2. the Complaint is dismissed in its entirety with prejudice;

3.  Notwithstanding paragraphs 1 and 2 of this Order, in the event that EPA fails to comply with paragraph 3 or paragraph 4 of the Agreement, plaintiffs shall have the right to reopen this action pursuant to paragraph 10 of the Agreement; and

4.  The Court shall have jurisdiction to reopen this action in accordance with paragraph 3 of this Order

SO ORDERED:

_____

LAURA T. SWAIN
UNITED STATES DISTRICT JUDGE

Dated: _____, 2010

2

# Exhibit   B

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------------- x

RIVERKEEPER, INC., et al.,

                   Plaintiffs,

              v.

United States Environmental Protection
Agency, et al.,

           Defendants.

----------------------------------------------------------------- x

:
:
:
:
:
:
:
:
:
:
:
:

ECF Case

06 Civ. 12987 (PKC)

**[PROPOSED] ORDER
DISMISSING THE
COMPLAINT**

WHEREAS, plaintiffs and defendants have advised the Court that, on

November 22, 2010, they executed a settlement agreement (the "Agreement")

resolving their disputes in this action.

IT IS HEREBY ORDERED that the Complaint is dismissed in its entirety

with prejudice.


                    SO ORDERED:

                    _____  _____

                    P. KEVIN CASTEL
                    United States District Judge

                    Dated: _____, 2010